# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| LISA GROOMS, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>RELIANCE STANDARD LIFE )<br>INSURANCE COMPANY, and )<br>WACHOVIA CORPORATION, )<br>)<br>Defendants. ) | **MEMORANDUM OPINION<br>AND RECOMMENDATION**<br><br>1:08CV795 |

This matter is before the court on motions for summary judgment by Defendant Wachovia Corporation (docket no. 24) and Defendant Reliance Standard Life Insurance Company (docket no. 26). Plaintiff has responded in opposition to the motions, and the matter is ripe for disposition. Furthermore, the parties have not consented to the jurisdiction of the magistrate judge. Therefore, the motions must be dealt with by way of recommendation. For the reasons discussed below, it will be recommended that Defendants' motions for summary judgment be granted.

## BACKGROUND

Plaintiff Lisa Grooms has brought this lawsuit against Defendants Wachovia Corporation ("Wachovia") and Reliance Standard Life Insurance Company ("Reliance") alleging that Defendants failed to pay benefits to Plaintiff pursuant to the terms of a group Personal Accident Insurance Policy ("the PAI Policy") issued by Reliance to Wachovia on behalf of Wachovia's employees and covered family

members.[1]  Plaintiff's claims arise out of her attempt to recover accidental death benefits on behalf of her deceased husband Robert Grooms, Jr. ("Mr. Grooms"). The first claim alleges that Defendants wrongly failed to pay benefits under the PAI Policy.  The second claim alleges that Defendant Wachovia was negligent in misinforming or failing to inform Plaintiff that she had the right to convert the PAI Policy from a group to an individual policy before she left her employment with Wachovia.  The third claim alleges that Defendant Wachovia negligently failed to continue coverage under the PAI Policy.

**FACTS AND CLAIMS**

**Events Leading to Claims of Coverage and Language of the PAI Policy**

Plaintiff was employed by Wachovia during 2005.  (Compl. ¶ 4.)  Throughout the year, Plaintiff paid premiums for herself and her husband to receive coverage under the PAI Policy in the amount of $300,000.  (AdminRec 004.) The PAI Policy states that its coverage is limited to "active employees" of Wachovia.  (AdminRec 031.)  The policy defines "active" employees as persons "actually working for [Wachovia] on a regular schedule of a minimum of 20 hours per week."  (AdminRec 033.)  The policy states, in relevant part, that coverage for the insured employee terminates on "the last day of the month in which the Insured Person's employment with [Wachovia] terminates."  (AdminRec 040.)  The policy further indicates, in

---

[1] The parties do not dispute that the PAI Policy was an "employee benefit plan," subject to the rules and regulations of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.*

2

relevant part, that coverage for dependents such as Plaintiff's deceased husband would terminate on the "date of termination of the Insured Person's Employee Insurance under this Policy." (*Id.*)

The PAI Policy also includes a conversion option, which permits an individual to obtain continued individual coverage under a conversion policy after his/her individual eligibility ends under the group policy. (AdminRec 043.) The conversion option extends to both the insured employee as well as to insured dependents. (*Id.*) The policy states that "[t]he Insured may convert to any individual Accidental Death and Dismemberment policy [Reliance Standard] offer[s] in the state where he lives." (*Id.*) The policy allows the insured employee or insured dependent to convert the policy within 31 days after his coverage ends. (*See id.*) The policy further states, however, that if the insured applies within the 31-day period after the date his coverage under the policy ends, the converted policy is effective on the date that the insured applied for coverage. (*Id.*)

Plaintiff notified Wachovia by letter dated September 16, 2005, that she would be resigning her position as of September 30, 2005. (AdminRec 012.) Plaintiff specifically stated in her resignation letter that her "last day of work will be September 30th." (*Id.*) Plaintiff's husband died on October 14, 2005, in a motorcycle accident. (Compl. ¶ 10.) On October 24, 2005, Plaintiff called Wachovia's Human Resources Service Center. (AdminRec 003.) She asked whether her benefits had ended on September 30, 2005, her last day of work, and she received confirmation

3

that her benefits had, in fact, ended on that date. (*Id.*) Plaintiff inquired into whether she could continue PAI coverage. She was told there was no way to continue that coverage through Wachovia's group plans. (AdminRec 003-004.)

In or about May 2006, Plaintiff made a claim to Wachovia for accidental death benefits under the PAI Policy. (*See* AdminRec 003.) Wachovia denied the claim via the internal appeal process by letter dated August 30, 2006, and again by letter dated February 23, 2007. (*See* AdminRec 003-004; 018-019.) In the letter dated August 30, 2006, Wachovia stated that it was denying Plaintiff's claim for benefits on the basis that her benefits ended on September 30, 2005, the last day of the month in which she voluntarily terminated her employment. (AdminRec 003-0004.) The letter further explained that even if Plaintiff had applied to convert the group PAI coverage to individual coverage on October 24, 2005, the policy makes clear that the converted policy goes into effect "on the date of application if the Insured applies within the 31-day period after the date his coverage under the Policy ends." (AdminRec 004; *see also* AdminRec 043.) The denial letter explained that because Mr. Grooms died on October 14, 2005, and because Plaintiff's first attempt to convert the group PAI coverage was not made until October 24, 2005, Mr. Grooms would not have been covered, even under a converted policy, on the date of his death. (AdminRec 004.)

Plaintiff appealed Wachovia's August 30, 2006, decision denying PAI benefits. (AdminRec 022.) In arguing for coverage on appeal, Plaintiff notified Wachovia that

4

she had received a pay check in October, thus contending that she was still an "active employee" in October 2005. The pay stub indicated a Pay Begin Date of October 1, 2005, and a Pay End Date of October 15, 2005. The October payment was for Plaintiff's accrual of unused Paid Time Off ("PTO"). In this last paycheck, the policy premiums for Plaintiff and her husband's PAI coverage were inadvertently deducted from Plaintiff's paycheck.[2] (*Id.*) By letter dated February 23, 2007, Wachovia denied Plaintiff's appeal, reiterating that there was no PAI coverage in effect at the time of Mr. Grooms' death, and noting that Plaintiff's last day of work was September 30, 2005. (AdminRec 018-019.) Wachovia, therefore, implicitly rejected Plaintiff's contention that she was still an "active employee" in October based on the fact that she had received a paycheck that month and because the PAI policy premiums had been deducted from that paycheck.

**STANDARD OF REVIEW**

Summary judgment is appropriate when there exists no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Zahodnick v. Int'l Bus. Machs. Corp.*, 135 F.3d 911, 913 (4th Cir. 1997). The party seeking summary judgment bears the burden of initially coming forward and demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its

---

[2] The PAI premium deduction was for $3.24. Wachovia acknowledged that the deduction was an administrative error and refunded that amount to Plaintiff.

burden, the non-moving party must then affirmatively demonstrate that there is a genuine issue of material fact which requires trial. *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a fact finder to return a verdict for that party. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 250 (1986); *Sylvia Dev. Corp. v. Calvert County, Md.*, 48 F.3d 810, 817 (4th Cir. 1995). Thus, the moving party can bear his burden either by presenting affirmative evidence or by demonstrating that the non-moving party's evidence is insufficient to establish his claim. *Celotex Corp.*, 477 U.S. at 331 (Brennan, J., dissenting). When making the summary judgment determination, the court must view the evidence, and all justifiable inferences from the evidence, in the light most favorable to the non-moving party. *Zahodnick*, 135 F.3d at 913; *Halperin v. Abacus Tech. Corp.*, 128 F.3d 191, 196 (4th Cir. 1997).

Before addressing Plaintiff's first claim for wrongful denial of benefits, I first note that the parties dispute what standard this court should apply. Generally, courts review a denial of ERISA benefits under a *de novo* standard. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). Where "the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan," courts apply an abuse of discretion standard of review. *Id.*; *see also Woods v. Prudential Ins. Co. of Am.*, 528 F.3d 320, 322 (4th Cir. 2008). The grant of discretion may be express or implicit, but, in any event, the

6

plan must "manifest a clear intent to confer such discretion." *Woods*, 528 F.3d at 322.

Plaintiff contends that, here, although each Defendant has directed the court to apply the abuse of discretion standard, neither Defendant has identified any language in the Plan justifying this standard of review. Plaintiff contends that a *de novo* standard is therefore appropriate. In response, Defendants contend that discretionary language is plainly stated in the PAI Policy; therefore, the abuse of discretion standard applies. Defendants do not cite to any specific language in the policy, but instead refer to "page 19" of the policy, which does appear to grant discretionary authority to Reliance as the claims fiduciary. (*See* Def. Reliance's Reply Br., p. 6; AdminRec 046.) I do not find any language in the policy granting discretionary powers to Wachovia as the administrator, nor do I find a provision in which Reliance has expressly delegated its discretionary authority to Wachovia; therefore, it appears that *de novo* review is appropriate. *See generally Rodriguez-Abreu v. Chase Manhattan Bank, N.A.*, 986 F.2d 580, 584 (1st Cir. 1993) (applying the *de novo* standard of review where the plan contained no provision granting discretion to the plan administrator, and where the plan fiduciary had not expressly delegated discretionary authority to the plan administrator). In any event, for the reasons stated *infra*, under either standard of review, Plaintiff's claims still fail.

Next, I note that Plaintiff has provided her own affidavit in opposing the summary judgment motions. Defendants contend that this court should not consider

7

Plaintiff's affidavit in reviewing the denial of ERISA benefits decision by Wachovia. I agree. As Defendants note, it is well settled that, in reviewing an administrator's decision to deny benefits, introduction of evidence outside the administrative record is permitted only when a *de novo* standard applies, and even then only in "exceptional circumstances." *See Bernstein v. CapitalCare, Inc.*, 70 F.3d 783, 788 & n.5 (4th Cir. 1995) (noting that a court is generally limited to considering only those facts before the plan administrator at the time of the final decision on benefits); *Quesinberry v. Life Ins. Co. of N. Am.*, 987 F.2d 1017, 1026-27 (4th Cir. 1993) (same). Plaintiff contends that this case involves "exceptional circumstances" in that her affidavit is submitted to show lack of due process, bias, or similar claims. I agree with Defendants, however, that Plaintiff is attempting to use her affidavit merely to supplement the facts of her claim. Plaintiff had the opportunity to submit evidence during her administrative appeal, and she may not submit an affidavit to simply supplement the record at this stage. Therefore, I will consider only the administrative record in addressing Plaintiff's claims.[3]

## *DISCUSSION*

Plaintiff's Claim against Wachovia and Reliance for Wrongful Denial of Benefits

I now turn to Plaintiff's claim against Defendants for wrongful denial of benefits under the PAI Policy. It is well settled that when interpreting an ERISA plan, a court

---

[3] Even if the court were to consider Plaintiff's affidavit, it would not alter the court's determination.

8

must treat the plan as a contract document, and the plan's language should therefore be given its ordinary interpretation. *See Haley v. Paul Revere Life Ins. Co.*, 77 F.3d 84, 88 (4th Cir. 1996); *Bynum v. Cigna Healthcare of N.C., Inc.*, 287 F.3d 305, 313 (4th Cir. 2002). Here, as noted, the PAI Policy states, in relevant part, that any insured dependent's coverage ends on "the date of termination of the Insured Person's Employee Insurance under this Policy." (AdminRec 040.) The policy further states, in relevant part, that the insured employee's coverage ends on "the last day of the month in which the Insured Person's employment with [Wachovia] terminates." (*Id.*)

It is undisputed that Plaintiff resigned from Wachovia effective September 30, 2005. Plaintiff contends, nevertheless, that she was still an "active employee" at the time of her husband's death. Under the policy language, an individual qualified as an "active employee" if the employee worked at least 20 hours per week. Plaintiff notes that in the October 2005 paycheck she was paid for unused PTO reflecting 68 hours of work over a two-year period. (*See* AdminRec 023-024.) Plaintiff contends that this amount averages out to 34 hours for each week over that two-week period, meaning that she nearly doubled the amount of work hours required to be an "active employee" under the PAI policy in her final paycheck. Plaintiff further notes that PAI Policy premiums were deducted from the October paycheck. (*See id.*) Plaintiff contends that, accordingly, she was still an active employee in October 2005 within the meaning of the policy. In other words, Plaintiff contends that she remained

9

insured under the PAI Policy by virtue of accrued time off that lasted though October 15, 2005. Plaintiff contends that she is therefore qualified for coverage through October 31, 2005, meaning that her deceased husband was also covered through October 31, 2005. Plaintiff contends that Wachovia therefore wrongfully denied her claim for benefits.

Plaintiff's argument is creative, but it is ultimately incorrect. As noted, to be eligible under the PAI Policy, a person must be an "active employee," and to be an "active employee" that person must be "*actually* working for [Wachovia] on a regular schedule of a minimum of 20 hours per week." (AdminRec 033) (emphasis added). The mere fact that Plaintiff received a pay check in October reflecting hours in PTO does not place her status in October within the plain language of the policy as an "active employee." That is, Plaintiff was *paid* for 20 hours or more per week, but she did not *actually* work even one hour in October.

As Defendants note, the purpose of an "active work" requirement in a policy is to ensure that only employees who are actually working will enjoy the benefits of the plan. *See Burnham v. Guardian Life Ins. Co. of Am.*, 873 F.2d 486, 490 (1st Cir. 1989); *Velez v. Crown Life Ins. Co.*, 599 F.2d 471, 476 (1st Cir. 1979). For instance, in *Glass v. United of Omaha Life Insurance Co.*, the plaintiff was absent from work due to illness, but the employer continued to pay his full salary and even considered him to be a full-time employee. 33 F.3d 1341, 1343 (11th Cir. 1994). Although the plaintiff continued to be paid after he stopped working, the Eleventh Circuit found

that it was "clear that [the plaintiff] was not working 30 hours per week . . . and thus was not eligible for the plan." *Id.* at 1345. The court also rejected the plaintiff's argument that the insurer was obligated to pay benefits based on its receipt of premiums from the plaintiff after he had stopped working. *Id.* at 1348.

In another case, *Turner v. Safeco Life Insurance Co.*, the policy included an "active work" requirement and further stated that an employee must work at least 30 hours a week to be eligible for benefits. 17 F.3d 141, 142 (6th Cir. 1994). The group certificate was issued effective February 1, 1988. *Id.* at 143. The decedent had stopped working due to illness before that date, and he subsequently died in December 1989. *Id.* at 142. The trial court found that the decedent was covered because he had still been on the payroll when the coverage became effective. *Id.* at 144. On appeal, the Sixth Circuit reversed, holding that the decedent was not an "active" employee for coverage purposes, and the court stated that it "attach[ed] no significance" to the fact that the policyholder considered the decedent to be an employee after February 1, 1988, when the group certificate was issued. *Id.* at 145.

The facts in this case are similar to those in *Glass* and *Turner* and compel the same conclusion that Plaintiff was not an "active employee" in October 2005. Furthermore, there is yet another reason why the policy language does not support a finding that Plaintiff was an "active employee" in October. That is, the PAI Policy lists several exceptions to the "active employee" requirement, including that an

11

employee remains eligible for coverage if on approved leave of absence under the Family and Medical Leave Act, if the employee is taking Education or Military Leave, if the employee is on short-term disability, or if the employee is a displaced employee.  (*See* AdminRec 031.)  As Defendants note, if Reliance intended for eligibility to continue for employees who resigned but who subsequently received paychecks for accrued PTO, it could have included this category along with the exceptions identified above.

Finally, although PAI policy premiums were inadvertently deducted from Plaintiff's post-termination check, this fact does not transform Plaintiff into an "active employee" eligible for coverage under the policy.  The Fourth Circuit has clearly held that mistaken premium deductions do not constitute a waiver of the right to deny coverage based on the terms of an ERISA plan.  *See, e.g., White v. Provident Life & Accident Ins. Co.*, 114 F.3d 26, 29 (4th Cir. 1997).  Furthermore, the PAI Policy here states that "[c]lerical errors in connection with this Policy . . . whether by [Wachovia], [Reliance], or any authorized Plan Administrator . . . *will not continue insurance that would otherwise have ceased or should not have been in effect.*"  (AdminRec 035) (emphasis added).  Thus, the language of the PAI Policy makes clear that Wachovia's clerical error in deducting premiums in the October paycheck does not affect the determination of when Plaintiff's coverage ended under the PAI

12

Policy. For all these reasons, Defendants are entitled to summary judgment as to Plaintiff's claim for wrongful denial of benefits.[4]

Plaintiff's Claims of Negligence against Defendant Wachovia

In her second and third claims, Plaintiff alleges that Wachovia was negligent in failing to inform Plaintiff before her termination of the right to convert the group policy to an individual policy and for failing to extend coverage for Plaintiff and her deceased husband. Defendants contend that these claims are preempted under ERISA and should therefore be dismissed.[5] It is well established, however, that when a state law claim "falls within the scope of [ERISA], the federal court should not dismiss the claim as preempted, but should treat it as a federal claim under [ERISA]." *Darcangelo v. Verizon Commc'ns, Inc.*, 292 F.3d 181, 195 (4th Cir. 2002). For example, "[w]hat was a state claim for breach of contract becomes a federal

---

[4] In any event, it appears that Plaintiff lacks standing to sue Reliance because she has failed to exhaust her administrative remedies as to Reliance. A claimant may not seek relief in court unless she has first exhausted her administrative reviews under an ERISA plan. *Gayle v. United Parcel Serv., Inc.*, 401 F.3d 222, 226 (4th Cir. 2005). Here, Plaintiff did not submit a claim to Reliance, the claims fiduciary. Rather, Wachovia, as the plan administrator, determined that there was no coverage under the PAI Policy.

[5] The preemption clause of ERISA, section 514(a), provides:

> Except as provided in subsection (b) of this section, the provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter *relate to* any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title.

29 U.S.C. § 1144(a) (emphasis added). It is undisputed here that Plaintiff's claims relate to an ERISA plan.

13

claim for the enforcement of contractual rights under [ERISA's civil enforcement provision, 29 U.S.C. § 1132(a)(1)(B)]." *Id.*

Here, in support of her state law negligence claims, Plaintiff contends that Defendant Wachovia had a duty to inform Plaintiff of her ability to convert her group policy to an individual policy after the last day of work and that Wachovia violated this duty. Plaintiff further contends that even if Defendant Wachovia was not required to give Plaintiff notice of her ability to convert the policy, it was required to provide correct information to her upon request regarding her coverage. Plaintiff argues that beginning in October 2005, and continuing through April 2006, she frequently attempted to contact Wachovia representatives for assistance in determining whether she and her husband qualified under the PAI Policy, whether her last day as an employee at Wachovia had been determined, and what her rights were. Plaintiff contends that these representatives gave her conflicting information, if they responded at all to her inquiries. Plaintiff contends that this conflicting information affected her ability to file an appeal, or to determine with whom she should speak about the matter. Plaintiff contends that, as a result of the misinformation and incorrect communications, Defendant violated her "right to due process."

As noted, if a state law claim is preempted by ERISA, the court must address it as a federal claim under ERISA's enforcement provisions. Plaintiff's state law negligence claim is in effect a claim for wrongful denial of benefits under 29 U.S.C.

14

§ 1132(a)(1)(B). The claim could also potentially implicate the notification provisions in 29 U.S.C. § 1132(c)(1)(b), which address a plan administrator's refusal to supply requested information and the resulting penalties for failing to do so. Neither of these two sections, nor any other provision in ERISA, however, imposes a duty on a policy administrator to remind a person that she has the right to convert a policy, unless the policy itself requires the administrator to do so. *See Estate of Spinner v. Anthem Health Plans of Va.*, 589 F. Supp. 2d 738, 744 (W.D. Va. 2008) (observing that ERISA does not "require[] insurers to provide special notice of insurance options available upon termination of group benefits," and failure to further clarify or mention the conversion right cannot by itself constitute a wrongful denial of benefits). Here, nothing in the PAI Policy itself required Wachovia to notify Plaintiff of the right to convert the policy. *See Slater v. Newell Rubbermaid, Inc.*, No. 4:04-cv-2096, 2005 WL 1651970, at *3 (M.D. Pa. July 8, 2005) ("There is no provision in the plan requiring [defendant] to notify [plaintiff] after his employment was terminated of his right to portable life insurance coverage."); *cf. Canada Life Assurance Co. v. Estate of Lebowitz*, 185 F.3d 231, 235-36 (4th Cir. 1999) (where the policy specifically required written notice, the administrator was required to comply with the notice requirement, and the administrator failed to provide the employee with adequate written notice of this right). Thus, Wachovia was not required to remind Plaintiff or her husband Mr. Grooms on September 30 or thereafter that they could convert their

15

coverage. Moreover, it appears to be undisputed that Plaintiff received a copy of the PAI Policy, and the conversion option is plainly stated in it.

Next, as for Plaintiff's contention that various customer service representatives at Wachovia provided her with conflicting information, any alleged misinformation is irrelevant because Plaintiff alleges that she received this conflicting information about coverage only *after* her husband's death.[6] As Defendant Wachovia notes, by that point the conversion right had already expired. Therefore, even if a Wachovia employee erroneously told Plaintiff that she could convert after her husband's death, that statement could not create coverage.[7] For all these reasons, Defendants' motions for summary judgment should be granted as to Plaintiff's second and third claims.

---

[6] Although Plaintiff has alleged a claim of negligence only against Wachovia in the complaint, she appears to argue in her brief that Reliance was negligent as well for failing to inform her about her right to conversion. As Reliance notes, however, Reliance had no way of knowing that Plaintiff ended her employment on September 30; therefore, Plaintiff's contention that Reliance was obligated to notify Plaintiff and Mr. Grooms of their conversion rights before Plaintiff ended her employment is wholly without merit.

[7] In addition, to the extent that Plaintiff contends that the customer service representatives with whom she spoke somehow breached a fiduciary duty owed to Plaintiff, this argument is without merit. These employees could not be considered "fiduciaries" under ERISA since they exercised no discretionary authority regarding management of the policy but were, rather, merely answering general, administrative questions about Wachovia's policies. *See Estate of Spinner*, 589 F. Supp. 2d at 748.

16

**CONCLUSION**

Accordingly, **IT IS RECOMMENDED** that the motions for summary judgment by Defendants Wachovia and Reliance (docket nos. 24 and 26) be **GRANTED** and that this action be dismissed with prejudice.

_____
WALLACE W. DIXON
United States Magistrate Judge

September 3, 2009